895 So.2d 14 (2004)
SUCCESSION OF Robert SEWELL, Jr.
No. 39,275-CA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 2004.
Opinion on Rehearing March 4, 2005.
*15 Sir Clyde Lain, II, Monroe, for Appellants Robert Dewayne Sewell and Richard Tyrone Sewell.
Wright & Underwood, L.L.P., by Patrick H. Wright, Jr., Monroe, for Appellee Mary Murth Sewell.
Dianne Hill, Monroe, for Appellee Robertine C. Gholston.
Before BROWN, WILLIAMS and DREW, JJ. BROWN, WILLIAMS, PEATROSS, DREW, and MOORE, JJ.
DREW, J.:
Robert Dewayne Sewell and Richard Tyrone Sewell contest a stipulated judgment of possession complaining about: (1) fees to an improperly qualified administrator and the attorney appointed to represent the succession; (2) the failure to recognize the claims of certain creditors; and (3) the failure to require the surviving spouse to post security for her usufruct over the community property. For the reasons set forth below, we affirm in all respects.

FACTS
Robert Sewell, Jr., died on January 6, 2003. Sewell had been married four times and had two children, Robert Dewayne Sewell and Richard Tyrone Sewell, both by his second wife, Blanche Ausberry Sewell. At the time of his death, Sewell was married to Mary Murth Sewell (Murth). On February 14, 2003, his children, Robert and Richard, filed a request for notice of the filing of application for appointment as administrator of their father's estate.
On March 27, 2003, a petition for appointment as administrator was filed in Ouachita Parish by Murth, the surviving spouse, to open the succession of her late husband. Her petition alleged that Sewell died intestate and requested that she be appointed the administrator of his succession. The matter was set for hearing on April 23, 2003. On April 10, 2003, Sewell's children filed an opposition to Murth's petition on the basis that they were their father's only heirs and were willing to accept his succession unconditionally.
In appellate briefs, all parties acknowledge that they agreed that Charles Traylor, III, would be appointed the administrator of Sewell's succession, with Patrick *16 Wright serving as the attorney for the court-appointed administrator. The judgment to that effect was signed on April 30, 2003.
After the appointment of the administrator, three separate proofs of claim were filed in the succession proceedings by Sewell's creditors. Bank One Corporation filed a proof of claim for $80,489.79 as the amount due on a promissory note executed by Sewell on October 18, 2002. Bank One also filed a claim through its agent, NCO Financial Systems, Inc., for $950.00 as the amount due in revolving credit card charges. Lastly, G.S. Financial Services, Inc., filed a proof of claim for $925.45 as the amount due for hospital services provided to Sewell in the year preceding his death.
On January 5, 2004, Sewell's two children filed a sworn detailed descriptive list of the succession assets and liabilities along with a rule asking that the other parties be ordered to show cause why the Sewell children should not be placed in possession of the succession property and the administrator of the succession dismissed. On January 28, 2004, the administrator filed his own sworn detailed descriptive list along with a petition for homologation of tableau of distribution. The matter was set for hearing on March 15, 2004.
At the March 15 hearing, the parties entered into a stipulation under which the heirs would be placed into possession. While the record contains no transcript of the proceedings, the court minutes reflect that the parties stipulated that Murth was entitled to her one-half interest in the community property and usufruct over the other half. Robert and Richard Sewell were recognized as decedent's sole heirs and thus entitled to possession of all his separate property and ownership of his one-half interest in the community property subject to Murth's usufruct. With respect to the administrator (Mr. Traylor) and succession attorney (Mr. Wright), the minutes expressly state:
Mr. Wright's attorney fees in the amount of $9,000.00 and Mr. Traylor's fee of $1,200.00 will be paid out of the succession. A judgment will be signed in accordance to those stipulations relieving Mr. Wright and Mr. Traylor of any further responsibility after the judgment is signed....
A judgment of possession in accordance with these stipulations was signed on May 17, 2004. The attorney for the heirs did not sign the judgment of possession submitted to and signed by the court. On May 26, 2004, the heirs filed a timely motion for new trial on the basis that:
 the fees granted to Mr. Traylor and Mr. Wright should not have been awarded because of Mr. Traylor's failure to properly qualify and because Mr. Wright's legal work did not warrant a $9,000.00 award;
 the judgment failed to address the claims of estate creditors; and
 the judgment failed to require Murth to post security for her usufruct over decedent's half of the community property.
The motion for new trial was denied by order signed on May 26, 2004.

DISCUSSION

Fees for the Administrator and the Succession Attorney
The heirs argue that Traylor's failure to post security, to take an oath and to be issued letters of administration prevented him from:
 properly qualifying as an administrator under the provisions of the Louisiana Code of Civil Procedure; and

*17  being entitled to an administrator's fee.
As to Mr. Wright's fee, the heirs argue that the record is devoid of any evidence of legal work warranting a fee of $9,000.00.
Procedurally, a consent judgment is not appealable when "voluntarily and unconditionally acquiesced in." La. C.C.P. art.2085. It may, however, be appealed when a party indicates that the judgment lacked the prerequisite consent. Pittman v. Pittman, 2001-2528 (La.App. 1st Cir.12/20/02), 836 So.2d 369, writ denied, XXXX-XXXX (La.9/19/03), 853 So.2d 642. The jurisprudence also indicates that this lack of prerequisite consent can be evidenced by the filing of a motion for new trial. Polk v. Polk, XXXX-XXXX (La.App. 3rd Cir.3/31/99), 735 So.2d 737.
Mr. Traylor was appointed administrator of the succession and Mr. Wright as the administrator's attorney at the hearing of April 23, 2003. These appointments were confirmed by judgment signed on April 30, 2003. The heirs did not seek review of this judgment. The record further indicates that at the hearing on the heirs' motion to be sent into possession of the succession property, the parties agreed to the discharge of both the administrator and succession attorney and to the stipulated awards of $1,200.00 and $9,000.00 as their respective fees.
While the heirs subsequently filed a motion for new trial, they did not argue therein, nor have they argued to this court, that the judgment of possession does not correctly reflect the stipulations made at the March 15, 2004, hearing. Nor did the heirs argue that they were induced to enter into the stipulations through some mistake of fact. Absent proof that the heirs' consent to the agreements was somehow vitiated or tainted, this court will not entertain an appeal from the stipulated award of fees for the succession administrator or the succession attorney even though the attorney's fee appears high under these facts.

Failure to Recognize Claims of Succession Creditors
The heirs argue that the trial court erred in sending them into possession of the succession property without recognizing the claims of certain creditors in the judgment of possession.
The heirs of an intestate succession which is under administration may be sent into possession at any time prior to the homologation of the final tableau of distribution by filing a petition for possession, the proceeding for which "shall be contradictory with the administrator." La. C.C.P. art. 3362. In the present case, the heirs filed a petition for possession which was served on the succession administrator, who was present at the hearing of March 15, 2004. The parties made their agreement, and the trial court rendered a judgment of possession placing the heirs in possession of succession property.
La. C.C.P. art. 3061 provides in pertinent part:
The judgment shall recognize the petitioners as the heirs, legatees, surviving spouse in community, or usufructuary, as the case may be, of the deceased, send the heirs or legatees into possession of the property owned by the deceased at the time of his death, and recognize the surviving spouse in community as entitled to the possession of an undivided one-half of the community property, and of the other undivided one-half to the extent that he has the usufruct thereof.
La. C.C.P. art. 3062 provides:
The judgment of possession rendered in a succession proceeding shall be prima facie evidence of the relationship to *18 the deceased of the parties recognized therein, as heir, legatee, surviving spouse in community, or usufructuary, as the case may be, and of their right to the possession of the estate of the deceased.
Nothing in these articles describing the procedural mechanism by which heirs are sent into possession of succession property indicates that any prejudice can come to creditors as a result thereof. The heirs have cited no authority for the proposition that creditors who have filed formal written proof of their claim are entitled to have that claim recognized in a judgment of possession or that the failure to do so in any way prejudices their right to pursue payment of those debts. To the contrary, as heirs who accepted the decedent's succession unconditionally and without benefit of inventory, the appellants bound themselves for the debts and obligations of the deceased as if they themselves had contracted their father's debts. La. C.C. art. 961. It has not been shown how the claims of creditors have been illegally prejudiced.

Failure to Require Murth to Post Security
The heirs also argue that the trial court erred in failing to require Murth to post security for her usufruct over the heirs' one-half interest in the former community property. La. C.C.P. art. 3154.1 (repealed by Act No. 158, 2004 Louisiana Legislative Session) allowed successors, other than children of the marriage, to demand security from a usufructuary who has use of former community or separate property of the decedent. We need not reach the issue of whether the heirs in the present case were entitled to relief under this article because the record is devoid of any evidence that such a demand for security was ever made. Since no demand for relief was made, the trial court could not have erred in failing to grant it.

Request for Additional Attorney's Fees
The administrator contends in his brief that the arguments raised on appeal are frivolous and accordingly seeks additional attorney's fees. Because this issue was not raised by appeal or by an answer to appellants' appeal, frivolous appeal damages, costs or attorney's fees are not now assessable. Hill v. Cloud, 26,391 (La.App.2d Cir.1/25/95), 648 So.2d 1383, writ not considered, 95-0486 (La.3/17/95), 651 So.2d 260.

DECREE
The judgment of the trial court is AFFIRMED. All costs of this appeal are assessed to appellants.

On Rehearing
BROWN, C.J., On Rehearing.
We granted appellants' request for a rehearing on the question of fees to be paid to the administrator and the attorney for the administrator. The facts of the case are essentially unchanged from the original opinion; however, for the following reasons, we now amend and as amended, affirm.

Discussion
On April 23, 2003, the trial court appointed Charles Traylor, III, as administrator and Patrick Wright as the attorney for the administrator. Prior to this appointment, the surviving spouse, Mary Sewell, who was represented by Patrick Wright, filed a request to be appointed administrator. Decedent's children objected to an administration and as the sole heirs agreed to accept the succession unconditionally. However, Lena Henderson Sewell intervened claiming that she was decedent's first wife and that they had *19 never divorced, causing the court to order an administration. It was agreed that the parties would deposit with Traylor $1,200, and that his fee would be $100 per hour. Mary Sewell, Lena Henderson Sewell and appellants, Robert and Richard Sewell, were each to deposit $400. Appellants were the only parties who did not deposit their portion of the fee.
Within one month of the appointment, on May 20, 2003, appellants advised all parties involved that they had found court records showing that Lena Henderson Sewell and decedent had, in fact, divorced. Accordingly, appellants requested that Wright end the administration, have the surviving spouse turn over the estate property and place the appropriate parties in possession of the estate. Wright declined to do so. On January 12, 2004, appellants filed a sworn detailed descriptive list and a rule to dismiss the administration and place decedent's children in possession of the succession property. On January 28, 2004, Wright filed on behalf of the administrator a detailed descriptive list and tableau of distribution, each setting forth the administrator's $1,200 fee and attorney fees of $10,357.70. Appellants immediately filed an opposition to the tableau of distribution on February 6, 2004.
The next month, on March 15, 2004, a hearing was had and the fees of Traylor and Wright were discussed. The court minutes indicated that appellants stipulated to the fees. A transcript of that hearing was not in the appellate record, but a certified copy was provided on rehearing. A review of that transcript shows that, contrary to the minute entry, appellants disputed the fees. The transcript is controlling. We therefore granted a rehearing to determine whether the fees, as charged, were warranted.

Administrator's Fee
As noted, Traylor was appointed on April 23, 2003. Although appellants requested Traylor's dismissal on May 20, 2003, after it was discovered that Lena Henderson Sewell and decedent were in fact divorced, he was not released until after the March 15, 2004, hearing. At the April 23, 2003, hearing, the trial court, without objection, set Traylor's fee at $100 per hour and ordered the parties to deposit with Traylor $1,200. Appellants did object to the tableau of distribution which contained the administrator's fee on February 6, 2004. They also objected to his fee at the hearing on March 15, 2004, and in their motion for a new trial, filed on May 26, 2004.
There was nothing introduced into the record to show the time that Traylor spent on his duties as administrator. Further, there is nothing in the record to show that $1,200 was an agreed to minimum fee as argued by Wright. The record simply shows that Traylor was to receive a fee of $100 per hour with all parties sharing equally in an up front deposit of $1,200. The trial court made no determination as to what work was done. However, the record does show that Traylor was appointed as administrator on April 23, 2003, and was not released until May 17, 2004. During that time, Traylor met with or had telephone conferences with Wright on several occasions. Additionally, he reviewed, verified and signed the tableau of distribution and petition for possession prepared by Wright. The parties, including appellants, did not dispute this appointment at the time it was made, and agreed to put up $1,200. We find that appellants should pay their share of the fee in accordance with this agreement. An examination of the record allows us to conclude that $1,200 was a reasonable administrator's fee. The judgment will be amended to *20 reflect that the succession will be liable for a fee of $400, to be paid out of appellants' share of the succession proceeds.

Attorney's Fee
During the March 15, 2004, hearing, Wright stated that his fee was $9,000, after a reduction of $1,357, but provided no detailed billing records. The reduction was a discount requested by the trial court. Additionally, Wright admitted in open court that "a lot of work was done by myself on behalf of Mary Sewell who was the administrator at that time ..." Actually, Mary Sewell had only petitioned to be named as administrator, and was never named or appointed. Wright did not provide a detailed bill or evidence of his work to the trial court. The trial court accepted Wright's naked statement and set attorney fees at $9,000. A petition for possession was filed and a judgment of possession signed on May 17, 2004. Appellants filed a motion for a new trial and attached a copy of what purports to be Patrick Wright's time sheet for the work he did on the succession. No objection was made to this attachment and the new trial motion was denied.
Wright's time sheet starts with his initial interview with Mary Sewell on February 4, 2003, and clocks more than 23 hours before his appointment as attorney for the administrator. During the period after the appointment, the time sheet demonstrates that Wright spent a great amount of time talking with Mary Sewell.
The transcript of the March 15, 2004 hearing is interesting:
By Mr. Lain: Right. One thing we forgot to mention is that the bonds were cashed in pursuant to an order signed by Judge Clark alleging that Mrs. Mary Sewell was the administrator. Not Charles Traylor. So I think.
By the court: But I made the appointment of Mr. Traylor.
By Mr. Lain: Right. But what I'm saying. Mrs. Mary Sewell was the one who signed the order saying that she was the administrator for cashing in those bonds and not Mr. Traylor. Just want the record to reflect that.
By Mr. Wright: Judge, we talked about that. At the time that a lot of work was done on behalf of Mary Sewell who was the administrator at that time such as gathering all this information up and getting everything lined up and almost ready to be closed out....
(Note: The bonds were not listed in Wright's detailed descriptive list or inheritance tax form, but a number of bonds were noted in appellants' detailed descriptive list).
One month after Wright's appointment, the divorce judgment was found. Identification of the property, recognition of the surviving spouse's interest in the community property and identity of the legal heirs was thereafter without contest. However, Wright spurned appellants' request for Wright's client, the surviving spouse, to turn over possession of the separate property, place the appropriate parties into possession and close the succession, despite his later declaration that the work he did for Ms. Sewell was "getting everything lined up and ready to be closed out...."
According to the detailed descriptive list filed by Wright, decedent's net estate was $16,708.12 (this was after deducting Wright's fee of $10,357.70); however, the inheritance and estate transfer tax return shows a net estate of $7,161.53. The record lends support to the argument that Wright represented Mary Sewell at all times and was protecting her community property interest.
The small size of the estate and the fact that within one month of Wright's appointment the claim of Lena Henderson Sewell *21 was shown to be false indicates that there was no need to prolong the administration. Further, we find that the trial court had no basis for setting Wright's fee. The court simply took Wright's assertion as to what his fee was and applied a small discount. Accordingly, we find that the attorney fee as set was unreasonable. Although Wright protected the interest of Mary Sewell, he was appointed as the attorney for the administrator. He did eventually file a detailed descriptive list, tableau of distribution and judgment of possession. This work justifies a reasonable fee of $1,500.

Conclusion
For the reasons set forth above, we amend the trial court's judgment in the following respects: Appellants, Robert D. Sewell and Richard T. Sewell, are ordered to pay $400 of their proceeds of the Succession of Robert Sewell, Jr., to the administrator, Charles Traylor, III, and the fee awarded to Patrick Wright, attorney for the administrator, is reduced to $1,500 to be paid by the Succession of Robert Sewell, Jr.
Amended and as amended, affirmed.
AMENDED AND AS AMENDED, AFFIRMED.
DREW, J., dissents with written reasons.
DREW, J., Dissenting.
I respectfully dissent for the reasons expressed in the original opinion. The minutes state that the parties stipulated to the fees about which the appellants now complain. We should not substitute our judgment for the considered stipulation of the parties absent a showing of fraud, duress, menace, or mistake.